FILED

DEC 1 8 2003

AT 8:30_____M
WILLIAM T. WALSH
CLERK

2002R00515

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA  : Criminal No. 03-880 (KSH)
                          :
                          :
                          : 18 U.S.C. §§ 542, 981(a)(1),
            v.            : 982(a)(1), 1956(a)(2)(A), 2339A & 2
                          : 22 U.S.C. § 2778(b)(1) & (c)
                          : 22 C.F.R. §§ 121.1, 127.1(d), 129.3,
                          : 129.6, and 129.7
                          : 28 U.S.C. § 2461(c)
HEMANT LAKHANI,           :
  a/k/a "Hemad Lakhani"   : I N D I C T M E N T

The grand jury in and for the District of New Jersey,

sitting in Newark, charges:

## COUNT ONE

### (Attempt to Provide Material Support to Terrorists)

### The Defendant

1.  At all times material to this Indictment:

    a.  Defendant HEMANT LAKHANI, a/k/a "Hemad

Lakhani," ("defendant LAKHANI") was a citizen and resident of the

United Kingdom.

    b.  Defendant LAKHANI was not registered with or

licensed by the United States Department of State's Directorate

of Defense Trade Controls to engage in the business of brokering

with respect to the import or transfer of any defense article, as

that term is defined in 22 C.F.R. § 121.1.



### The Scheme to Sell and Import into the United States Shoulder-Fired Surface-to-Air Missiles

2.    Defendant LAKHANI engaged in a scheme, whose primary object was to sell shoulder-fired surface-to-air missiles to individuals whom defendant LAKHANI believed were terrorists and to illegally import some or all of those missiles into the United States so that they could be used in terrorist attacks on American commercial aircraft.

3.    It was a part of the scheme that in or about December, 2001, defendant LAKHANI began to have conversations with an individual who, unbeknownst to defendant LAKHANI, was a cooperating witness ("CW") acting under the direction of federal law enforcement officers.  The CW presented himself to defendant LAKHANI as someone who represented a group of terrorists interested in purchasing and illegally importing the missiles into the United States.  The CW represented to defendant LAKHANI that the missiles were to be used in a "jihad" against American commercial aircraft.

4.    It was further part of the scheme that defendant LAKHANI and the CW had numerous conversations and meetings to negotiate and facilitate the illegal missile sale and importation (hereinafter referred to as the "missile deal").  On a number of occasions, defendant LAKHANI traveled to New Jersey to meet with the CW in person regarding the missile deal.

5.   It was further part of the scheme that for his role in the scheme, defendant LAKHANI expected to receive a commission that was a percentage of the total value of the missile deal.

6.   It was further part of the scheme that defendant LAKHANI, in an effort to successfully complete the missile deal, assured the CW of his ability to obtain a variety of military arms and weapons for the terrorist group the CW represented by, among other things, discussing with the CW prior weapons transactions in which defendant LAKHANI had been involved.   Among other items, defendant LAKHANI told the CW he could procure anti-aircraft missiles, anti-aircraft guns, tanks and armored personnel carriers, radar systems, and explosive devices known as "dirty bombs."

7.   It was further part of the scheme that defendant LAKHANI provided to the CW, both in person and by facsimile, brochures of military arms and weapons that defendant LAKHANI could procure.

8.   It was further part of the scheme that defendant LAKHANI provided the CW with correspondence between defendant LAKHANI and weapons suppliers with whom defendant LAKHANI was dealing to obtain the missiles.

9.   It was further part of the scheme that defendant LAKHANI agreed to arrange for the purchase and importation into the United States of one "sample" missile initially and for the

purchase of many more missiles, ranging in number from 20 to 200, for the terrorist group with whom he believed the CW was associated.

10. It was further part of the scheme that defendant LAKHANI and the CW discussed that the illegal nature of the deal meant that no bona fide end user certificate would be issued in connection with the missile deal. An end user certificate is documentation required by many countries -- including the United States government and many European governments -- in connection with the export of arms. An end user certificate specifies the ultimate destination of arms being exported from a country in order for that country to verify that the arms being exported are approved and are going to an approved destination. Defendant LAKHANI stated to the CW that, despite the illegal nature of the deal, he could, for an additional fee, arrange to purchase a counterfeit end user certificate.

11. It was further part of the scheme that defendant LAKHANI, the CW, and others agreed that the shipping documents associated with the importation of the original sample missile into the United States would falsely list the contents of the shipment as merchandise other than missiles or military equipment, specifically medical or dental equipment.

12. It was further part of the scheme that defendant LAKHANI, in an effort to enhance the prospect of completing the

- 4 -

missile deal, attempted to convince the CW and, through the CW, the terrorist group that the CW purported to represent, of the high quality of the missiles being sold to them by stating that the missiles defendant LAKHANI was supplying were far newer and superior to the missiles used in the terrorist attempt to shoot down an Israeli commercial aircraft in Kenya in November, 2002.

13. It was further part of the scheme that in order to facilitate the missile deal, defendant LAKHANI requested a cash down payment on the initial sample missile. Defendant LAKHANI instructed the CW to make this payment in New York, after which it would be transmitted overseas for defendant LAKHANI's benefit. On or about October 16, 2002, according to defendant LAKHANI's instructions, the CW paid $30,000 in cash to an individual in New York who transmitted the money overseas on or about October 17, 2002. Defendant LAKHANI later confirmed receiving the payment.

14. It was further part of the scheme that defendant LAKHANI later demanded full payment for the sample missile up front, before the supplier would provide the missile. On or about March 4, 2003, pursuant to instructions given by defendant LAKHANI to the CW, law enforcement wire transferred $56,500 to a foreign bank account to complete payment for the initial sample missile. Defendant LAKHANI confirmed receipt of the money.

15. It was further part of the scheme that in or about July, 2003, defendant LAKHANI and the CW traveled to Russia,

ostensibly to meet with the suppliers of the missiles. Unbeknownst to defendant LAKHANI, Russian law enforcement authorities had by then infiltrated the missile deal and, in reality, defendant LAKHANI and the CW met with two officers from the Russian Federal Security Service ("FSB") posing in an undercover capacity as the missile suppliers.  While in Russia, defendant LAKHANI and the CW had a number of meetings and conversations with the FSB Officers in furtherance of the missile deal, including meetings during which defendant LAKHANI and the CW were shown what appeared to be a real, unaltered shoulder-fired surface-to-air missile that was ready to be shipped to the United States.  In fact, the item was a replica of a shoulder-fired surface-to-air missile from which the explosive charge had been removed.

16.  It was further part of the scheme that during a meeting in Russia in or about July, 2003, defendant LAKHANI solicited the FSB Officers posing as weapons suppliers to sell him a multi-ton quantity of C-4 explosive.

17.  It was further part of the scheme that in or about late July, 2003, defendant LAKHANI provided to the CW shipping documents pertaining to the missile deal, including an invoice and a bill of lading.  These documents falsely listed the merchandise being shipped to the United States as medical equipment.

- 6 -

18. It was further part of the scheme that on or about August 12, 2003, defendant LAKHANI met with the CW in New Jersey to verify that the missile had arrived safely in the United States and to negotiate the next stage of the missile deal:  the sale of an additional 50 shoulder-fired surface-to-air missiles to the CW and the terrorist group he purported to represent.  At this meeting, defendant LAKHANI handled the replica missile that had arrived in the United States and advised the CW that the shoulder-fired surface-to-air missiles that were being imported into the United States could be used most effectively in terrorist attacks against commercial aircraft in the United States if ten to fifteen commercial aircraft were shot down simultaneously at different locations throughout the country.

19. From in or about December, 2001, to on or about August 12, 2003, in the District of New Jersey and elsewhere, defendant

HEMANT LAKHANI,
a/k/a "Hemad Lakhani,"

did knowingly attempt to provide material support and resources, and to conceal and disguise the nature, location, source, and ownership of material support and resources, intending that they were to be used in preparation for, and in carrying out, a violation of Title 18, United States Code, Sections 32, 2332a, and 2332b.

- 7 -

In violation of Title 18, United States Code, Sections 2339A and 2.

## COUNT TWO

### (Unlawful Brokering with Respect to the Import and Transfer of Foreign Defense Articles)

1.  The allegations set forth in Paragraphs 1 through 18 of Count 1 of this Indictment are realleged as if set forth in full herein.

2.  From in or about December, 2001, to on or about August 12, 2003, in the District of New Jersey and elsewhere, defendant

HEMANT LAKHANI,
a/k/a "Hemad Lakhani,"

did knowingly and willfully engage in the business of brokering activities with respect to the import and transfer of foreign defense articles, namely shoulder-fired surface-to-air-missiles of foreign origin, which were non-United States defense articles of a nature described on the United States Munitions List, without having first registered with and obtained from the Department of State's Directorate of Defense Trade Controls a license for such brokering or written authorization for such brokering.

In violation of Title 22, United States Code, Section 2778(b)(1) and (c), Title 22, Code of Federal Regulations, Sections 121.1, 127.1(d), 129.3, 129.6 and 129.7, and Title 18, United States Code, Section 2.

## COUNTS THREE AND FOUR

### (Money Laundering)

1.    The allegations set forth in Paragraphs 1 through 18 of Count 1 of this Indictment are realleged as if set forth in full herein.

2.    On or about the dates specified below, in the District of New Jersey and elsewhere, defendant

> HEMANT LAKHANI,
> a/k/a "Hemad Lakhani,"

knowingly and with the intent to promote the carrying on of specified unlawful activities, namely providing material support to terrorists, contrary to Title 18, United States Code, Section 2339A; engaging in brokering activities with respect to the import and transfer of foreign defense articles without first registering with or obtaining a license from the Directorate of Defense Trade Controls of the United States Department of State, contrary to Title 22, United States Code, Section 2778(b)(1) and (c) and Title 22, Code of Federal Regulations, Sections 121.1, 127.1(d), 129.3, 129.6 and 129.7; and importing into the United States by means of false statements a shoulder-fired surface-to-air missile, contrary to Title 18, United States Code, Section 542, did transmit and transfer, cause to be transmitted and transferred, and attempt to transmit and transfer, the following amounts of U.S. currency from a place in the United States to and through a place outside the United States:

| COUNT | DATE | AMOUNT | DESCRIPTION |
|-------|------|--------|-------------|
| 3 | On or about October 17, 2002 | $29,370 | Wire transfer from New York to Hong Kong of funds representing the $30,000 cash downpayment toward the purchase of a shoulder-fired surface-to-air missile, as described in paragraph 13 of Count One (less commission and wire transfer fee) |
| 4 | On or about March 4, 2003 | $56,500 | Wire transfer to a foreign bank account as final payment toward the purchase and importation of a shoulder-fired surface-to-air missile, as described in paragraph 14 of Count One |

In violation of Title 18, United States Code, Section 1956(a)(2)(A) and 2.

- 11 -

## COUNT FIVE

### (Attempting to Import Merchandise Into the United States By Means of False Statements)

1.   The allegations set forth in Paragraph 1 through 18 of Count 1 of this Indictment are realleged as if set forth in full herein.

2.   From in or about December, 2001, to on or about August 12, 2003, in the District of New Jersey and elsewhere, defendant

HEMANT LAKHANI,
a/k/a "Hemad Lakhani,"

did knowingly and willfully attempt to enter and introduce into the commerce of the United States imported merchandise, namely a shoulder-fired surface-to-air missile, by means of a fraudulent and false invoice, declaration, affidavit, and paper, and by means of false statements, written and verbal, and by means of a false and fraudulent practice.

In violation of Title 18, United States Code, Sections 542 and 2.

## FIRST FORFEITURE ALLEGATION

1.    The violations alleged in Count 1 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(G).

2.    The violations of Title 18, United States Code, Section 2339A alleged in Count 1 of this Indictment were acts in support of international terrorism, as that term is defined in Title 18, United States Code, Section 2331, against the United States and its citizens.

3.    As a result of the offenses alleged in Count 1 of this Indictment, the defendant shall forfeit to the United States all right, title, and interest in all assets, foreign or domestic, acquired or maintained by the defendant with the intent and for the purpose of supporting, planning, conducting, and concealing acts of international terrorism against the United States and its citizens, pursuant to Title 18, United States Code, Section 981(a)(1)(G)(ii).

4.    As a result of the offense alleged in Count 1 of this Indictment, the defendant shall pay to the United States a money judgment equal to the value of the assets subject to forfeiture under paragraph 3, pursuant to Federal Rule of

Criminal Procedure 32.2(b)(1).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

## SECOND FORFEITURE ALLEGATION

1.    The violations alleged in Counts 3 and 4 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 18, United States Code, Section 982.

2.    As a result of committing one or more of the money laundering offenses in violation of Title 18, United States Code, Section 1956 alleged in Counts 3 and 4 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the offenses, and any property traceable thereto, including but not limited to the following:

a)    As a result of the offenses alleged in Counts 3 and 4 of the Indictment, the defendant shall pay to the United States of America a money judgment equal to $86,500 in United States currency, representing the amount of proceeds obtained as a result of the offenses, in violation of Title 18, United States Code, Section 1956 for which the defendant is liable, pursuant to Federal Rule of Criminal Procedure 32.2(b)(1).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

(a)    cannot be located upon the exercise of due diligence;

(b)   has been transferred or sold to, or deposited with, a third party;

(c)   has been placed beyond the jurisdiction of the court;

(d)   has been substantially diminished in value; or

(e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

## THIRD FORFEITURE ALLEGATION

1.    The violations alleged in Counts 2 and 5 of this Indictment are realleged and incorporated by reference herein for the purpose of alleging forfeiture to the United States of America, pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

2.    As a result of committing one or more of the offenses alleged in Counts 2 and 5 of this Indictment, in violation of Title 22, United States Code, Section 2778(b)(1) and (c) and Title 18, United States Code, Section 542, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the following:

a)    As a result of the offenses alleged in Counts 2 and 5 of the Indictment, the defendant shall pay to the United States of America a money judgment equal to $86,500 in United States currency, representing the amount of proceeds obtained as a result of the offenses, in violation of Title 22, United States Code, Section 2778(b)(1) and (c) and Title 18, United States

Code, Section 542 for which the defendant is liable, pursuant to Federal Rule of Criminal Procedure 32.2(b)(1).

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

     (a)   cannot be located upon the exercise of due diligence;

     (b)   has been transferred or sold to, or deposited with, a third party;

     (c)   has been placed beyond the jurisdiction of the court;

     (d)   has been substantially diminished in value; or

     (e)   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON

CHRISTOPHER J. CHRISTIE
United States Attorney

- 18 -